UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| CRYSTAL MARTIN and MORGAN OTTMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NORTHLAND GROUP, INC.,<br><br>Defendant. | Case No.: 17-cv-979<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1.  This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2.  The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.  Plaintiff Crystal Martin is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.  Plaintiff Morgan Ottmann is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5.  Each plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect debts from her allegedly incurred for personal, family or household purposes.

6. Each plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that each plaintiff engaged in a consumer transaction.

7. Defendant Northland Group, Inc. ("Northland") is a foreign corporation with its principal place of business located at 7831 Glenroy Rd Ste 250, Edina, MN 55439.

8. Northland is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. Northland is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Northland is a "debt collector" as defined in 15 U.S.C. § 1692a and § 427.103(3), Wis. Stats.

## FACTS

10. On or about December 12, 2016, Northland mailed a debt collection letter to Martin regarding an alleged debt owed to "CAPITAL ONE BANK (USA), N.A." A copy of this letter is attached as Exhibit A.

11. Upon information and belief, the alleged debt in Exhibit A was a personal credit card account, incurred for personal, family or household purposes.

12. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Martin inserted by computer.

13. Exhibit A lists a "Current Balance Due" of $6,366.51.

14. Exhibit A also contains the following text:

We are willing to reduce your balance by offering you a settlement. Please note, we are not obligated to renew this offer. Upon receipt and clearance of $4138.26, a letter will be sent confirming that the above refenced account has been resolved. This offer does not affect your rights below.

Exhibit A.

15. The statement in Exhibit A: "Upon receipt and clearance of $4,138.56, a letter will be sent confirming that the above referenced account has been resolved," is confusing and misleading to the unsophisticated consumer. Such broad, open-ended language is inherently confusing to the consumer and an unfair collection practice.

16. The consumer has no way to know from Exhibit A whether Northland and/or Capital One would treat a payment of the purported "settlement" amount as an actual settlement (i.e. releasing Plaintiff from any remaining liability) of the alleged debt.

17. Northland's language leaves open the possibility that the consumer will make a payment at the offered 65% settlement amount (i.e. 35% off), only to be informed that the offer has since expired and Northland will continue to collect on the remaining balance.

18. The consequences of misleading a consumer with respect to settling a debt are much greater than misleading about the amount of the debt. *See eg. Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000). Northland could continue to collect the remaining balance – 35% – of the alleged debt.

19. Northland's misrepresentations are material misrepresentations because they mislead the unsophisticated consumer about the nature of the settlement offer.

20. Exhibit A also contains the following text:

> At this time, CAPITAL ONE, N.A. has informed us that your account meets its requirements for possible legal action. No final decision about possible legal action on this account will be made until more than 30 days after your receipt of this notice to allow time for you to exercise your rights set forth below.

Exhibit A.

21. The above language is false, misleading and confusing to the unsophisticated consumer. Northland has no basis to make such claims.

3

22. Capital One is the eighth largest bank in the United States. https://en.wikipedia.org/wiki/Capital_One. In addition to credit cards, it specializes in home loans, auto loans, banking and savings products.

23. Northland has no basis to assert that Capital One has determined that Martin's account meets Capital One's requirements for possible legal action.

24. Upon information and belief, Northland has no input in, or inside information into Capital One's business practices with respect to lawsuits or otherwise.

25. Upon information and belief, Capital One sends the vast majority of post charge-off, delinquent accounts to collection agencies and/or to debt purchasers, and also continues telephonic and direct mail collection efforts on its own behalf, instead of initiating legal action.

26. Upon information and belief, the decision of how to collect consumers' accounts is generally made months after letters in the form of Exhibit A is sent to customers, and is often made automatically, by computer, with little or no human input.

27. The statements about a possible lawsuit and that "no final decision about possible legal action on this account will be made more than 30 days after your receipt of this notice" together falsely indicate to the unsophisticated consumer that litigation is imminent.

28. Upon information and belief, Capital One has not filed a lawsuit against Martin. A search of CCAP shows no civil actions filed by Capital One against Martin in Wisconsin, almost seven months after Defendant sent Exhibit A to Martin.

### *Ottmann Letter*

29. On or about July 18, 2016, Northland mailed a debt collection letter to Plaintiff Ottmann regarding an alleged debt owed to "Citibank, N.A." ("Citibank"). A copy of this letter is attached to this complaint as Exhibit B.

30.     Exhibit B states that it is attempting to collect a "CitiVisa" branded credit card account.

31.     Upon information and belief, the alleged debt in Exhibit B was a personal credit card account, incurred for personal, family or household purposes.

32.     Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

33.     Exhibit B states that the "Outstanding Balance" of the debt is $1,030.41.

34.     Exhibit B also includes the following settlement offers:

> **Option I:** CITIBANK, N.A. will allow you to settle your account for $412.14 in 3 payments starting on 08/08/16. If you need additional time to respond to this offer, please contact us. We are not obligated to renew this offer. The payments can be no more than 30 days apart. Upon receipt and clearance of all three payments of $137.38, a letter will be sent confirming the above referenced account has been resolved.
>
> **Option II:** CITIBANK, N.A. will allow you to settle your account for $463.68 in 6 payments starting on 08/08/16. If you need additional time to respond to this offer, please contact us. We are not obligated to renew this offer. The payments can be no more than 30 days apart. Upon receipt and clearance of all 6 payments of $77.28, a letter will be sent confirming the above referenced account has been resolved.

35.     Moreover, Exhibit B also contains the following language:

> CITIBANK, N.A. will report any discharge of indebtedness as required by the Internal Revenue Code and corresponding IRS regulations. Please contact your tax advisor if you have any questions.

36.     The above statement is false and misleading.

37.     The Internal Revenue Code, 26 U.S.C. §6050P, and Treasury Regulations, 26 C.F.R. §1.6050P-1 requires reporting of certain discharges of indebtedness.

38.     Reporting is not required:

    a. Of the discharge of indebtedness that is interest or other non-principal amounts, 26 C.F.R. §§1.6050P-1(d)(2) and (3);

    b. Of the discharge of principal not exceeding $600.

39.     Exhibit B falsely and/or misleadingly states that the Internal Revenue Code and IRS regulations *require* Citibank to report "any discharge of indebtedness" to the IRS. In reality,

a creditor is only required to report a discharge of indebtedness in which the principal amount discharged exceeds $600.00.

40. Payment in full of Option II would discharge $566.73 of the listed "outstanding balance." Citibank would not be required to report that discharge of indebtedness to the IRS.

41. Moreover, on information and belief, a substantial portion of the debt described in Exhibit B consists of interest, late fees, and other non-principal amounts. Citibank would have charged a default interest rate of approximately 30 percent for several months before charging off the account.

42. As a result, payment of the amount specified in either "Option I" or "Option II" would result in a discharge of less than $600.00 of the principal amount allegedly owed.

43. Referring to tax consequences in a collection letter is intimidating and misleading, suggesting to the unsophisticated consumer that failure to pay the debt in full will give rise to problems with the Internal Revenue Service ("IRS").

44. Exhibit B misleads the unsophisticated consumer by implying that:

    a. Unless the consumer pays the entire amount that the defendant alleges is owed on the alleged debt, the consumer would be reported to the IRS.

    b. Unless the consumer pays the entire amount the letter alleges is owed for the debt, the consumer will have to pay taxes on the unpaid balance.

45. Sometimes, issuing a 1099C when not required does, in fact, create problems with the IRS and state taxing authorities. Persons who do not report the discharged amount listed on a 1099C as income are at risk to, and frequently do, receive tax deficiency notices or reduced refunds.

46. Defendant voluntarily chose to give the tax advice found in Exhibit B. No law or regulation obligates defendants to include the statement complained of in collection letters.

## *The FDCPA*

47. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

48. 15 U.S.C. § 1692e(5) specifically prohibits threatening "to take any action that cannot legally be taken or that is not intended to be taken."

49. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

50. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

51. Wis. Stat. § 427.104(1)(L) prohibits: "Threaten[ing] action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

52. Plaintiffs were confused by Exhibits A and B.

53. Plaintiffs had to spend time and money investigating Exhibits A and B, and the consequences of any potential responses to Exhibits A and B.

54. Plaintiffs had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiffs on the consequences of Exhibits A and B.

55. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such

7

practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

56. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

8

Case 2:17-cv-00979-LA   Filed 07/17/17   Page 8 of 12   Document 1

## COUNT I – FDCPA

57. Plaintiff Martin incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

58. Exhibit A includes an offer that is misleading as to when the offer may expire.

59. A consumer who mails a payment in the full amount of the "settlement amount" listed on the letter, may not have actually settled the claim if Northland decides, on its own whim, that the offer expired prior to the payment.

60. Northland violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692f.

## COUNT II – FDCPA

61. Plaintiff Martin incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

62. Exhibit A falsely threatens that Capital One may institute possible legal action against Plaintiff Martin.

63. The threat was false and misleading to the unsophisticated consumer.

64. Northland has no knowledge of or influence on Capital One's internal procedures with respect to bringing lawsuits, and thus had no basis to include the language from Exhibit A, quoted in Paragraph 18 of this Complaint.

65. Northland's conduct violates 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692f.

## COUNT III – FDCPA

66. Plaintiff Ottmann incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this complaint.

9

67. Defendant's references to potential tax consequences of settling a debt violated 15 U.S.C. §§ 1692e, 1692e(2) and 1692e(10)

68. Misrepresentation of a debtor's rights or liabilities under the Internal Revenue Code in connection with the collection of a debt is an FDCPA violation. *Kaff v. Nationwide Credit, Inc.*, 13cv5413, 2015 WL 12660327 (E.D.N.Y., March 31, 2015); *Wagner v. Client Servs., Inc.*, 08cv5546, 2009 WL 839073, at *4 (E.D. Pa. Mar. 26, 2009); *Good v. Nationwide Credit, Inc.*, 14cv4295, 2014 WL 5422103, at *3 (E.D. Pa. Oct. 24, 2014); *Kuehn v. Cadle Co.*, 5:04cv432, 2007 U.S. Dist. LEXIS 25764 (M.D. Fla., April 6, 2007).

## COUNT IV – WCA

69. Plaintiff Martin incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

70. Exhibit A threatens an action against the consumer – legal action – notwithstanding the fact that, upon information and belief, neither Northland nor Capital One had any intention of initiating such action.

71. In fact, Northland had no knowledge of Capital One's litigation procedures and no basis to make the claim in Exhibit A.

72. Northland violated Wis. Stat. § 427.104(1)(L).

## CLASS ALLEGATIONS

73. Plaintiffs bring this action on behalf of two Classes.

74. Class I consists of (a) all natural persons in the State of Wisconsin (b) to whom defendant Northland sent a collection letter in the form of Exhibit A to the Complaint in this Action, (c) seeking to collect one or more debts incurred for personal, family or household

10

Case 2:17-cv-00979-LA   Filed 07/17/17   Page 10 of 12   Document 1

services, (d) on or after July 17, 2016, and up to and including July 17, 2017 (e) that was not returned by the postal service.

75. Class II consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit B to the Complaint in this action, (c) on or after July 17, 2016, and up to and including July 17, 2017, inclusive, (d) that was not returned by the postal service

76. Each Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each Class.

77. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibits A or B violate the FDCPA.

78. Plaintiffs' claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

79. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

80. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## **JURY DEMAND**

81. Plaintiffs hereby demand a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs requests that the Court enter judgment in favor of Plaintiffs and the Class and against Defendants for:

(a)  actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: July 17, 2017

**ADEMI & O'REILLY, LLP**

By: /S/ John D. Blythin
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Denise L. Morris (SBN 1097911)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com
dmorris@ademilaw.com